(63 App. Div. 32.)

### COALE v. COALE et al.

(Supreme Court, Appellate Division, First Department. July 9, 1901.)

EXECUTORS AND ADMINISTRATORS—ALLOWANCE OF CLAIMS—EVIDENCE—SUFFICIENCY.

    Claims were made against an estate for sums paid for the benefit of the deceased, and on notes purporting to have been executed by the decedent. Claimant, who had been connected with the management of the decedent's business, gave evidence that the sums were paid at deceased's request and for her benefit, and that the notes were given to him for borrowed money. The circumstances of the loan were explained, and the contestants, after an examination of all the books and accounts, did not discredit it. In opposition to such claims, the contestants offered only general, and not specific, evidence. *Held*, that a judgment allowing the claims will not be disturbed.

    Van Brunt, P. J., and Ingraham, J., dissenting.

Appeal from judgment on report of referee.

Action by William T. Coale against William T. Coale and others, as executors substituted for the Farmers' Loan & Trust Company. From a judgment in favor of plaintiff entered on report of a referee, and from an order denying a motion for a new trial, defendants appeal. Affirmed.

Argued before VAN BRUNT, P. J., and PATTERSON, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

Lewis S. Goebel, for appellant executor.
E. L. Richards, for appellant Hudnut.
Henry B. Wesselman, for respondent.

O'BRIEN, J.   The action was brought against the Farmers' Loan
& Trust Company as temporary receiver of the estate of Jane A.
Dwyer, deceased, to recover four claims made by the plaintiff against
the estate.  Subsequently, by an order of revivor, the action was
continued against the plaintiff and others as executors, they having
become such upon the probate of the will of the deceased.   The
claims, which aggregated $8,498.19, were to obtain (1) a balance al-
leged to be due on a demand note given by the deceased to the
plaintiff for $7,000, and dated April 17, 1890, with interest, less
the amounts paid thereon, with interest;  (2) a balance on a demand
note for $2,000 dated August 17, 1893, with interest, less payments
thereon and interest;  (3) payment of a check for $432 signed by
the decedent, and dated July 2, 1895, but not presented for payment
by the plaintiff before her death, which occurred August 15, 1895;
and (4) reimbursement for $432 paid by the plaintiff August 2, 1895,
for a hotel bill incurred by the deceased.  With some slight changes
in the sums demanded, the referee found in plaintiff's favor upon
all the claims, and held that he was entitled to recover of the es-
tate $8,309.02.  From the judgment entered upon the referee's re-
port, the defendants appeal.

We have presented upon this appeal purely questions of fact,
and conceding, in view of the nature of the claims which are made
against a decedent's estate by one who, to a considerable extent,
had been connected with its management, that they should be
closely scrutinized and satisfactorily proved, there is still no differ-
ence in the rule to be applied in determining whether the questions
of fact were rightly decided in the trial court.  The rule, as we un-
derstand it, is that, where there is evidence to support the findings
of a referee or of the trial court, we are not justified in disturbing
such findings unless they are clearly against the weight of evidence.
The record before us furnishes ample testimony to support the find-
ings of the referee, and though, with respect to certain of the claims,
it might seem to us individually that the evidence is not as strong
as we could wish, that is no reason for setting aside the referee's
conclusions, provided, there is, as stated, sufficient evidence to sup-
port them.   And with respect to all the claims it must be remem-
bered that a prima facie case was established after the plaintiff
had sustained the burden which rested upon him of proving in the
first instance that he had parted with his money at the request and
for the benefit of the deceased.  This burden, we think, he sus-
tained, and there was no evidence given on behalf of the defendants
which outweighed it.   The defendants in fact relied almost exclu-
sively upon probing the plaintiff's testimony, and, by arguments
resting thereupon, sought to deduce a refutation of the claims made
by him.  Particularly is this true with regard to the hotel bill of
$350, which, as the receipt in evidence shows, was paid by the plain-
tiff on August 2, 1895, in compromise of a bill first made for $374.89;
the evidence offered being all one way, and consisting of the plain-
tiff's own statement, corroborated by that of the hotel keeper to
whom the sum was given, that the amount paid was on account
of and for the benefit of the deceased.  In refuting this claim, and

to overcome the probative force of such evidence, the defendants suggest that it is possible that as the plaintiff from time to time had moneys of the deceased,—particularly after her death, about the middle of August,—which moneys he received as her manager in running her hotel, it might well be that the payment of this account was balanced by the receipt by him of other moneys. This suggestion, however, is a mere surmise and conjecture, resting on no solid foundation; and, as we have already stated, after the plaintiff had sustained the burden of showing that he had made the payment it was then incumbent upon those who disputed it to prove by way of defense—as was not done, or even attempted—that he was in some way repaid out of moneys belonging to the decedent. What has just been said applies equally well to the claim represented by the check for $432 which the plaintiff testified was given him by the deceased during the month prior to her death for expenditures he had made for her, which check he had not presented for payment.

The more serious questions relate to the notes upon which the plaintiff seeks to recover. As to them he was subjected to a long and searching cross-examination, during which he apparently made every effort to give information as to everything connected with the business of the deceased, as well as his personal affairs. Thus, he submitted his savings-bank book, and, when asked if he minded telling where the checks were from, answered: "Not a bit. I am willing to tell you all I can." And when asked if he objected to leaving his book, to be looked through with reference to the checks, he said: "Oh, yes; we will leave them all." Many of the checks he explained at length, and he gave such details as could be expected of a man who was charged with many duties in relation to various transactions. His explanation of the giving of the notes to him was that he had saved considerable ready cash from his earnings while in Mrs. Dwyer's employ, which he kept in a safe; and Mrs. Dwyer, who trusted him and was interested in his advancement, preferred to borrow of him from time to time such moneys as she required, giving him the six per cent. interest to help him along, rather than raise the moneys by giving her bonds or other property as security to outsiders. Both the notes were identified as being signed by the deceased, and they bear indorsements of payments at various times, which payments, the plaintiff testified, were generally made to him in cash. As to the note for $2,000 the explanation given was very complete. The plaintiff testified that Mrs. Dwyer went to Italy before interest on a mortgage came due, and left a note in her favor for $3,000, which he was to collect and apply to that interest; that the note was protested, and, by taking what money he could get at the house and $2,000 of his own, he paid the $3,000 of interest, and the note to him was signed upon Mrs. Dwyer's return. Upon this note the plaintiff had indorsed two payments which he testified were made to him by the deceased, of $500 and $100, dated respectively March 27 and July 10, 1895. As to this item, therefore, we think the evidence amply supports the conclusion of the referee. Thus we come to the first note for $7,000, which was dated April 17, 1890. The plaintiff testified that

he had advanced on this note only $4,000 individually, the balance of $3,000 he having borrowed from others; that his own money represented various small accounts which had accumulated, and which the deceased had figured out and settled by giving the note, the memorandum used being thereafter destroyed; that Mrs. Dwyer had been interested in various enterprises, including a quarry and an ice company, and had lost considerable, and he thought this $7,000 went into the quarry and the ice company. The note, he said, she had dated back a year in order to allow him interest. It also bears indorsements of payments, the plaintiff testifying that he was in the habit of applying sums therefor with the knowledge and consent of Mrs. Dwyer. These indorsements amount to $4,254, and two of them were credited after the death of Mrs. Dwyer. One of these the plaintiff afterwards turned over to the temporary receiver; but another, for $574, he allowed to stand, and it was not interfered with by the reference, for the reason that, the plaintiff being executor, the result would be the same to the estate. In opposing the plaintiff's evidence, the defendants offered general, and not specific, testimony. Thus, Mr. Dwyer, who married the deceased in January, 1897, and who had testified that she had said to him, "My affairs are in the right shape, and I have got one of the best men in the world to manage for me, and I want you to become friends," stated that immediately before the marriage Mrs. Dwyer, upon his remarking that his affairs were in bad shape, answered: "That is no objection. I have property enough for both;" that Mr. Coale was then called, and she said, "Mr. Coale, I want to state to Mr. Dwyer all my affairs and all my accounts up to date have been settled with you and everybody, and they are there in that book, and I am as comfortable as a bug in a rug," and Mr. Coale said it was true. This witness further testified: "It may have been an inducement. I don't know. I contracted this marriage finally." The plaintiff denied that the alleged conversation took place. The only other evidence offered by the defendants was to the effect that Mrs. Dwyer never had sums of money about her, from which it is sought to be inferred that she could not have made in cash the payments indorsed by the plaintiff upon the notes, and her bank account shows no such payments by check. In this connection the plaintiff testified that the deceased was very careless in her accounts, and it is evident that the payments might have been made in cash, as testified, without others being informed thereof. And the argument that the plaintiff's bank account does not show the receipt of those moneys is answered by the fact that he was accustomed to keep large amounts in the safe, which he used to reloan when desired. The argument that he could not, upon his salary of $1,800 a year, have possessed such sums of money to loan, is also answered. His expenses, he testified, were no more than $200 a year, so he saved in 10 years $16,000 while with the deceased, and in addition he says he made some $2,000 in the naphtha-launch business. He has now in hand about $5,000, so that the total represented would be about $13,000, which is considerably within the $18,000. It is not necessary, however, to explain how it is that the

plaintiff could make this loan or be possessed of these notes, and, if there was no evidence furnishing such explanation, that would. be no proof that the claims do not exist. All that was essential was that the plaintiff should offer evidence sufficient to show that he had, as he alleged, advanced moneys and made expenditures upon the request and for the benefit of the deceased, and it was then the defendants' duty to disprove the claims, or prove that the payments were made with decedent's money. The note was identified and explained, and the defendants, after examination of all books and accounts, were unable to discredit it. Although the plaintiff's proof may not be as complete or convincing as could be desired, it is, in our opinion, sufficient to support the conclusion of the referee, and, as the latter is not against the weight of evidence adduced, it should not be disturbed.

Upon the whole case, therefore, we think that the judgment entered in accordance with the referee's findings should be affirmed, with costs.

PATTERSON and LAUGHLIN, JJ., concur. VAN BRUNT, P. J., dissents.

INGRAHAM, J. (dissenting). Considering the relations that existed between the plaintiff and the decedent, the fact that he had constantly in his hands large sums of money that he had collected as her agent, and the contradictions in his testimony, I do not think that the finding that there was anything due upon the promissory notes sought to be enforced should be sustained. The statute of limitations had run against these notes, but for the payments credited thereon, and there is not any satisfactory proof that these payments were made by the decedent or by her directions; and I think much more satisfactory evidence should be presented before a confidential agent of decedent, occupying relations that this agent occupied, should be allowed to deplete her estate. I think the judgment should be reversed.